UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ROBERT BURKE, JR.,                                                                                                Plaintiff,

v.                                                                              Civil Action No. 3:18-cv-802-DJH-CHL

DANIEL FORBIS,                                                                                                Defendant.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

In December 2017, Defendant Kentucky State Trooper Daniel Forbis injured Plaintiff Robert Burke, Jr. when Forbis forcefully arrested Burke during a traffic stop. (*See* Docket No. 19-1, PageID # 52–53; D.N. 21, PageID # 117)  Burke alleges that in so doing, Forbis violated his Constitutional rights under the Fourth, Fourteenth, and Eighth Amendments, committed assault and battery, and intentionally inflicted emotional distress. (D.N. 1)  Forbis has moved for summary judgment on all counts (D.N. 19), which Burke opposes. (D.N. 21)  For the reasons explained below, the Court will grant Forbis's motion.

**I.**

Forbis stopped Burke for speeding and other traffic violations on the evening of December 10, 2017. (D.N. 21, PageID # 115; D.N. 19-1, PageID # 51)  According to Forbis, when Burke opened the driver's-side car door, Forbis immediately smelled alcohol and noticed that Burke's eyes were glassy and bloodshot. (D.N. 21, Pl. Exh. 1(B), 12:51:51–12:52:03)  Burke testified that he drank three to four beers before driving and felt "somewhat buzzed" (*id.*, Pl. Exh. 1(C), 2:41:29–:43), and that he admitted to Forbis that he had been drinking. (*Id.*, 2:50:04–:07)  Forbis asked Burke to get out of the vehicle and complete field sobriety tests. (*Id.*, Pl. Exh. 1(B), 12:52:21–:24;

1

*id.*, Pl. Exh. 1(C), 2:51:05–2:52:36) Burke testified that he was "sure" that he "flunked" the one-leg stand test. (*Id.*, Pl. Exh. 1(C), 2:54:07–:10)

Burke then asked Forbis if he had a camera, to which Forbis replied that he did not. (*Id.*, Pl. Exh. 1(B), 12:55:32–39; *id.*, Pl. Exh. 1(C), 2:54:22–2:54:35) Burke told Forbis that he would record the encounter on his cell phone. (*Id.*, Pl. Exh. 1(C), 2:54:40–:43; D.N. 19-1, PageID # 54) As Burke began reaching for his pocket, Forbis told him that he was under arrest and grabbed Burke's arm. (D.N. 21, Pl. Exh. 1(B), 12:55:46–12:56:13; *id.*, Pl. Exh. 1(C), 2:55:15–:21) Burke testified that Forbis immediately brought him to the ground, causing his face to hit the concrete; that he tried to raise his head multiple times, and each time Forbis hit his head back into the ground; and that Forbis told him to "quit resisting," to which Burke replied that he was not resisting. (*Id.*, Pl. Exh. 1(C), 2:55:22–2:57:05) The parties agree that after Forbis took Burke to the ground, Forbis administered four blows with his hands to Burke's head and one blow, with his knee, to Burke's side. (*Id.*, Pl. Exh. 1(C), 2:57:33–:55; D.N. 19-3, PageID # 82–83)

Forbis's version of events differs as to what occurred before Burke hit the ground. Forbis testified that while he explained the one-leg stand test to Burke, Burke did not follow his instructions, began pacing, and balled his fists up. (D.N. 21, Pl. Exh. 1(B), 12:55:14–:30) According to Forbis, Burke disregarded his instructions not to reach for his pocket, ceased cooperating with the field sobriety tests, and had "become an officer safety issue." (*Id.*, 12:55:48–12:56:22) Forbis recalls that when he grabbed Burke's arm, he saw Burke balling up his unsecured fist. (*Id.*, 12:56:30–:47) Forbis testified that at that point he performed a "straight-arm bar takedown" and brought Burke to the ground, where Burke tucked his arms and knees underneath his body, repeatedly raised his head, and began moving his right arm back towards Forbis. (*Id.*, 12:56:48–12:57:29) Forbis further stated that although he advised Burke multiple times to stop

2

resisting and place his hands behind his back, Burke "actively continued to resist." (*Id.*, 12:57:33–:43)  With the assistance of another trooper who had arrived on scene, Forbis managed to secure Burke's arms behind his back and stand him up. (*Id.*, 12:57:45–12:58:19)

Forbis took Burke to Springview Hospital, where Burke received treatment for injuries sustained to his face during the takedown and ensuing struggle. (D.N. 19-1, PageID # 54–55; D.N. 21, PageID # 117)  Burke was later transferred to University of Louisville Hospital for further treatment. (D.N. 19-4, PageID # 112; D.N. 21, PageID # 117)

Burke filed this action, asserting § 1983 claims based on Forbis's alleged violation of the Fourth, Eighth, and Fourteenth Amendments, as well as claims of assault and battery and intentional infliction of emotional distress. (D.N. 1)  Meanwhile, Burke was convicted by a jury in Marion District Court of Resisting Arrest, Menacing, and Operating a Motor Vehicle with Blood Alcohol Concentration of 0.08 or Greater. (D.N. 19-1, PageID # 55; D.N. 19-3, PageID # 94–96; D.N. 21, PageID # 188)  Burke appealed, raising the issue of "double jeopardy and whether menacing and resisting arrest have duplicative elements." (D.N. 19-3, PageID # 101)  The state dismissed the menacing charge, which rendered the appeal moot and vacated that portion of the judgment. (*Id.*, PageID # 102)

## II.

Before the Court may grant a motion for summary judgment, it must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party satisfies this burden, the nonmoving party must produce specific facts demonstrating a genuine

3

issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The evidence of the nonmoving party is to be believed, *id.* at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in that party's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Nevertheless, the nonmoving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Id.* at 586. Instead, the Federal Rules of Civil Procedure require the nonmovant to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

**A.     Fourth Amendment Claim**

Forbis argues that Burke's Fourth Amendment excessive-force claim is barred by the doctrine set out in *Heck v. Humphrey*, 512 U.S. 477 (1994). (D.N. 19-1, PageID # 61) "It is well settled under *Heck* that when an individual [who has been convicted of resisting arrest] brings a § 1983 claim against the arresting officer, 'the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence' . . . . If so, the claim is barred."[1] *Parvin v. Campbell*, 641 F. App'x 446, 449 (6th Cir. 2016) (quoting

---

[1] This applies unless the plaintiff "proves that his 'conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas

4

*Heck*, 512 U.S. at 487). The Sixth Circuit has "recognized two circumstances under which an excessive force claim might conflict with a conviction": first, "when the criminal provision makes the lack of excessive force an element of the crime," and second, "when excessive force is an affirmative defense to the crime."[2] *Id.* (internal citations omitted). In other words, "where the plaintiff's claim could have been asserted in criminal court as an affirmative defense," *Heck* bars the plaintiff's subsequent § 1983 claim. *Id.*

"Under the commentary to KRS 520.090, an affirmative defense to a plaintiff's charge of resisting arrest is 'where the officer used more force than is reasonably necessary to effect the arrest so that his conduct constitutes an assault on the person arrested.'" *Dobson v. Sandidge*, No. 1:20-CV-00115-GNS, 2021 WL 707657, at *2 (W.D. Ky. Feb. 23, 2021). Although Burke argues that Kentucky statutes do not "allow a defense of self-protection" and that "Kentucky Courts have been clear that there is no right to use self-defense during an arrest" (D.N. 21, PageID # 122), the relevant authority shows that Kentucky law allows a defense to resisting arrest when an officer uses excessive force. *See* Ky. Rev. Stat. § 520.090, Kentucky Crime Commission Commentary (explaining that a defense to resisting arrest is "permitted where the officer used more force than is reasonably necessary to effect the arrest so that his conduct constitutes an assault on the person arrested."); Ky. Rev. Stat. § 503.50, Kentucky Crime Commission Commentary (explaining that

---

corpus.'" *Parvin*, 641 F. App'x at 449 (quoting *Heck*, 512 U.S. at 487). Burke does not contest the validity of his Marion District Court conviction. (D.N. 21, PageID # 118–19)

[2] Additionally, "both the § 1983 claim and the conviction must arise out of the same events." *Parvin*, 641 F. App'x at 450 (citing *Cummings v. City of Akron*, 418 F.3d 676, 682–83 (6th Cir. 2005). Burke does not argue that his conviction for resisting arrest and his § 1983 excessive force claim do not arise out of the same events (*see* D.N. 21, PageID # 118–123), nor could he, as this is not a case where "the alleged use of force occurred after the suspect was handcuffed and brought under control." *Parvin*, 641 F. App'x at 450 (citing *Coble v. City of White House,* 2009 WL 2850764, at *8–9 (M.D. Tenn. Aug. 29, 2009), *rev'd on other grounds,* 634 F.3d 865 (6th Cir. 2011)).

5

although the use of physical force "is not justifiable," this limitation does not "apply if an officer attempting an arrest is using more force than is reasonably necessary to effect the arrest"); Ky Rev. Stat. § 503.060(1) ("[T]he use of physical force by a defendant upon another person is not justifiable when . . . [t]he defendant is resisting an arrest by a peace officer, recognized to be acting under color of official authority *and using no more force than reasonably necessary to effect the arrest*, although the arrest is unlawful." (emphasis added)); *Baze v. Parker*, 371 F.3d 310, 327 (6th Cir. 2004) (explaining that under Kentucky law, "[i]f the police are using 'more force than is reasonably necessary to effect the arrest' then a suspect who resists arrest can validly claim he acted in self-defense," giving that suspect "a perfect defense." (quoting Ky. Rev. Stat. § 503.050, Kentucky Crime Commission Commentary)); *Dobson*, 2021 WL 707657, at *3 (staying § 1983 excessive-force action pending resolution of state charge for resisting arrest because "a favorable judgment on [p]laintiff's excessive force claim could provide a defense to [the plaintiff's] charge [for resisting arrest] under Kentucky law."). Since Burke's claim of excessive force "could have been asserted in criminal court as an affirmative defense" to his charge of resisting arrest, *Heck* bars Burke's § 1983 excessive-force claim.[3] *Parvin*, 641 F. App'x at 449.

**B.    Fourteenth Amendment Claim**

Forbis correctly argues that Burke's Fourteenth Amendment claim—that Forbis's use of force in arresting Burke "deprive[d] [Burke] of his rights as guaranteed under the Fourteenth Amendment" (D.N. 1, PageID # 4)—"fails to state a legal claim." (D.N. 19-1, PageID # 65) "[A]*ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

---

[3] The Court therefore need not consider Forbis's alternative argument that his "use of force was constitutionally 'reasonable.'" (D.N. 19-1, PageID # 64)

Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Forbis is therefore entitled to summary judgment on this claim.

### C.   Eighth Amendment Claim

Forbis similarly argues that Burke's Eighth Amendment claim "asserts a cause of action that does not apply in this case." (D.N. 19-1, PageID # 66)  The "Eighth Amendment protects *post-conviction* criminal detainees from cruel and unusual punishment," *Malam v. Adducci*, 469 F. Supp. 3d 767, 782–83 (E.D. Mich. 2020) (emphasis added), but it "does not apply to pretrial detainees." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001); *see also Graham v. Connor*, 490 U.S. 386, 398–99 (1989) ("[T]he less protective Eighth Amendment standard applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.'" (quoting *Ingraham v. Wright,* 430 U.S. 651, 671 n.40 (1977))); *Bell v. Wolfish*, 441 U.S. 520, 579 (1979) ("[The Eighth Amendment] protects individuals *convicted* of crimes from punishment that is cruel and unusual." (emphasis added)). As Forbis's alleged use of excessive force occurred in the process of arresting Burke, who at that time was not a post-conviction detainee, Forbis is entitled to summary judgment on this claim.

### D.   Tort Claims

Burke's remaining claims all arise under Kentucky law and were before this Court pursuant to the Court's supplemental jurisdiction authorized by 28 U.S.C § 1367(a). (*See* D.N. 1)  Having disposed of Burke's federal claims—the only basis for subject-matter jurisdiction—the Court declines to exercise supplemental jurisdiction over his remaining state-law claims. Pursuant to 28 U.S.C. § 1367(c)(3), this Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction." In the Sixth

Circuit, there is "a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed"; the Court should retain jurisdiction "only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh [the] concern over needlessly deciding state law issues." *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 584 (6th Cir. 2011) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)).

The discretion to decline supplemental jurisdiction over state-law claims extends to all stages of litigation, including summary judgment. *See Booker v. City of Beachwood*, 451 F. App'x 521, 523 (6th Cir. 2011) (citing *Nails v. Riggs*, 195 F. App'x 303, 313 (6th Cir. 2006)). The fact that the parties have engaged in extensive discovery does not bar this Court from declining to adjudicate state-law claims. *See Jeung v. McKrow*, 264 F. Supp. 2d 557 (E.D. Mich. 2003); *Practice Perfect, Inc. v. Hamilton Cty. Pharm. Ass'n*, 732 F. Supp. 798 (S.D. Ohio 1989). When declining to exercise supplemental jurisdiction, the Court may either dismiss the state-law claims or remand them. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 761 (6th Cir. 2000). "In exercising that discretion, the Court may consider the convenience of the parties and expeditiousness in resolving the case." *Jeung*, 264 F. Supp. 2d at 572 (citing *Long*, 201 F. 3d at 761).

Here, the Court concludes that dismissing Burke's claims without prejudice is the appropriate disposition. *See* 28 U.S.C. § 1367(c) and (d); *Artis v. D.C.*, 138 S. Ct. 594, 598 (2018) ("We hold that § 1367(d)'s instruction to 'toll' a state limitations period [for thirty days] means to hold it in abeyance, *i.e.,* to stop the clock.").

## III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Forbis's motion for summary judgment (D.N. 19) is **GRANTED**.  A separate judgment will be entered this date.

(2)     Burke's remaining state-law claims are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

June 14, 2021

David J. Hale, Judge
United States District Court